UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WEI DONG, et al., <br><br> Defendants. | Case No. 20-cv-06752-JSW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, SETTING INITIAL CASE MANAGEMENT CONFERENCE; AND ORDER OF REFERRAL** <br><br> Re: Dkt. Nos. 22, 36 |

Now before the Court for consideration are a motion to dismiss filed by Defendants Wei Dong ("Mr. Dong") and Lin Sheng ("Ms. Sheng") (collectively "Defendants") and a joint letter brief outlining a discovery dispute between Defendants and Plaintiff, Monolithic Power Systems, Inc. ("MPS"). The Court has considered the parties' arguments, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion, with leave to amend.

**BACKGROUND**

MPS alleges it is a "world leader in the design, development, manufacture, and sale of semiconductor products, including synchronous rectifier products that help convert the alternating current ('AC') from electrical wall outlets to the direct current ('DC') that is needed to power many everyday devices like smart phones and laptop computers." (Compl. ¶ 1; *see also id.* ¶¶ 21-23 (overview of MPS business).) MPS alleges it takes numerous steps to protect its confidential information, which include requiring its employees to sign confidentiality agreements, controlling access to its offices, and placing restrictions on its computer network. (*Id.* ¶¶ 4, 24-26.)

MPS hired Mr. Dong in February 2016 as a Product Line Director for MPS's AC/DC products. Ms. Sheng initially applied for a position with MPS, but was not asked to interview.

Mr. Dong then created a Staff Architect position that was designed to ensure MPS hired Ms. Sheng, which it did in June 2016. MPS alleges that Mr. Dong and Ms. Sheng "have known each other for decades" and worked together at Texas Instruments but never disclosed these facts to MPS. According to MPS, Mr. Dong and Ms. Sheng each promised to relocate to California but did not. In February 2017, MPS transferred Ms. Sheng to MPS's Design and Engineering Department in an effort to accommodate Ms. Sheng's complaints that it was difficult to do her job remotely. (*Id.* ¶¶ 28-38, 97-101.)

Mr. Dong and Ms. Sheng each executed MPS's Confidential Information and Invention Assignment Agreement (the "Confidentiality Agreements"). (*Id.* ¶¶ 4, 30, 37, Exs. A-B.) Defendants ended their employment with MPS in March 2017 and April 2017, respectively, and signed certifications that they were aware of and would abide by their Confidentiality Agreements. (*Id.* ¶¶ 3, 28, 43-45, 51, Exs. H-I.) After Mr. Dong left MPS, it sent him a letter addressing his obligations under that agreement. (*Id.* ¶ 46, Ex. C.)

MPS alleges, on information and belief, that neither Mr. Dong nor Ms. Sheng "intended to work for MPS long-term[.]" (*Id.* ¶ 47.) Instead, they "spent much of their short tenure at MPS plotting to steal highly confidential trade secrets related to the design and layout of MPS's synchronous rectifier products" and took clandestine "steps to start their own company (Meraki) while still employed by MPS." (*Id.* ¶¶ 5, 7; *see also id.* ¶¶ 6-9, 39-42, 47-50, 52-54, 91-102.) According to MPS, Defendants stole customer lists, pricing data, and other technical information, some of which were incorporated into Meraki's products and patents. Defendants and Meraki allegedly are using that information to compete directly with MPS. (*Id.* ¶¶ 55-70, 75-76.)

Based on these and other allegations that the Court shall address as necessary, MPS asserts claims against Defendants for breach of contract, violations of the Computer Fraud and Abuse Act ("CFAA"), and fraud.

//
//
//
//

**ANALYSIS**

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] They argue the facts are insufficient to state claims for breach of contract or for violations of the CFAA. Defendants argue the fraud claim is superseded by California's Uniform Trade Secrets Act ("CUTSA"), is not alleged with the particularity required by Rule 9, and fails to state a claim.[2]

**A.    MPS States a Claim for Breach of Contract.**

Defendants argue MPS fails to state facts to support the alleged breaches of their Confidentiality Agreements.[3] On a Rule 12(b)(6) motion, the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable" to MPS. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), MPS's "obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). MPS's allegations must be more than "conceivable" and must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. MPS's claims will be facially plausible if the factual content of the Complaint

---

[1]     Unless otherwise noted, all further citations to rules are to the Federal Rules of Civil Procedure.

[2]     Defendants initially argued the CFAA claim also was superseded by CUTSA but withdrew that argument on reply. In *Silvaco Data Systems v. Intel Corporation*, the Court of Appeal noted the California Supreme Court's criticism of "the use of 'preempt' to describe the suppression of one state law by another'" and, therefore, utilized the term supersede. 184 Cal. App. 4th 210, 232 n. 14 (2010) (quoting *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 247 n. 5 (2007)), *disapproved on other grounds by Kwikset v. Super. Ct.*, 51 Cal. 4th 310 (2011). Although the parties use the terms preempt or preemption, the Court uses the terminology set forth in *Silvaco*. *See also Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1203 n.2 (N.D. Cal. 2020) (following *Silvaco*'s use of supersede); *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 953-54 (N.D. Cal. 2019) (same).

[3]     MPS makes numerous allegations "on information and belief." In light of allegations relating to a forensic analysis of the Defendants' work computers, the Court cannot say the use of that term shows MPS is "engaging in speculation to an undue degree" on this claim. *Delphix Corp. v. Actifo, Inc.*, No. 13-cv-04613-RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). However, if MPS files an amended complaint, it should set forth the facts that form the bases for its "information and belief."

permits the Court "to draw the reasonable inference that" Defendants are liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Defendants agreed "to hold in strictest confidence, and not to use, reproduce or copy, except for the benefit of [MPS], or to disclose to any person, firm or corporation without written authorization of [MPS's Board of Directors] any" of MPS's Confidential Information. They also agreed not to "keep, access, transmit, store, transfer, email, or otherwise maintain any Confidential Information of [MPS] on any system, device, storage media, computer, or server other than" specified MPS devices or devices to which MPS or its CEO gave "express, written advance approval[.]" (Confidentiality Agreements ¶ 1.1.)[4] Defendants also agreed to "make full written disclosure to [MPS], [to] hold in trust for the sole right and benefit of [MPS], and … assign to [MPS], or its designee" their interest in and to any inventions which they "solely or jointly conceive[d] or develop[ed] or reduce[d] to practice" during their employment. (*Id.* ¶ 2.2.)

MPS alleges that a forensic analysis of Defendants' MPS-assigned laptop computers shows they each connected "personal external storage devices" to the laptops while they were employed with MPS. MPS also alleges this analysis revealed that Ms. Sheng "prepared a cost-competitive analysis comparing MPS's products to other competitors," before she joined MPS, which would not fall within the scope of her responsibilities. (Compl. ¶¶ 6, 8.) MPS details how Defendants allegedly breached these terms by, *inter alia*, copying information, incorporating MPS's confidential and trade secrets into Meraki patents, and using MPS's customer lists and pricing data all to compete with MPS at Meraki, rather than for MPS's benefit. MPS also alleges that Defendants breached the Confidentiality Agreements by failing to assign to MPS rights in work developed at, or stolen from, MPS. (*Id.* ¶¶ 48-50, 52-53, 57, 60-70, 74-78.)

Defendants argue that MPS fails to make clear what information had not been disclosed to

---

[4] The Court will not reproduce in full the definition of Confidential Information set forth in Paragraph 1.1. It includes "any information [MPS] considers confidential and has not voluntarily disclosed to the general public, including, without limitation, any sensitive business information, technical information, … customer lists, … technical specifications, design layouts, … trade secrets, manufacturing specifications, internal customer contact information, financial information, or any other information relating to the current and/or future business and operations of" MPS.

the public, relying on *Zomm*, 391 F. Supp. 3d at 952. However, in *Zomm*, the court did not require the plaintiff to distinguish between public and non-public information. Instead, it dismissed the plaintiff's breach of contract claim because it was apparent from the allegations that at least some of the information the plaintiff claimed the defendant used improperly had been disclosed publicly. The court reasoned that fact "undermine[d]" the claim. *Id.* at 952-53. That is not the case here.

The Court concludes MPS has alleged sufficient facts to state a claim for breach of contract. *See, e.g., Snapkeys*, 442 F. Supp. 3d at 1203-04. Accordingly, the Court DENIES, IN PART, Defendants' motion to dismiss.

**B.     MPS Fails to State a Claim for Violations of the CFAA.**

Defendants also move to dismiss the CFAA claim for failure to state a claim. "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009); 18 U.S.C. § 1030(a)(1)-(7). MPS alleges Defendants violated provisions of the CFAA which prohibit, respectively, a person from:

> intentionally access[ing] a computer without authorization or exceed[ing] unauthorized access, and thereby obtain[ing] … information from any protected computer"; [or]
>
> knowingly and with the intent to defraud access[ing] a protected computer without authorization or exceed[ing] authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value… .

18 U.S.C. §§ 1030(a)(2)(C) and (a)(4).[5] The CFAA defines the term "exceeds authorized access" to mean "access to a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

---

[5]     MPS did not specific which subsections of 1030(a)(2) Defendants allegedly violated. From the facts alleged it is clear that subsections (A) and (B) are not applicable.

The Supreme Court recently interpreted the "exceeds authorized access" provision of the CFAA and determined the CFAA does not "does not cover those who …. have improper motives for obtaining information that is otherwise available to them." *Van Buren v. United States* -- U.S. --, 141 S.Ct. 1648 (2021).  The petitioner, Van Buren, was a police officer who obtained license plate information from a law enforcement database in exchange for money, which violated his department's policy.  There was no dispute that he used valid credentials, that he had authorization to use the computer, and that he was authorized to access the database from which he obtained the information.  The government argued that because he violated department policy, he had exceeded his authorized access.  Van Buren argued he could only violate the CFAA if he obtained information he was not allowed to obtain. 141 S.Ct. at 1653-54.  The Supreme Court adopted Van Buren's interpretation and held that the phrase "'is not entitled so to obtain' is best read to refer to information that a person is not entitled to obtain by using a computer that he is authorized to access." *Id.*, at 1655; *see also id.* at 1659-60.  Because Van Buren was authorized to use the computer at issue to access the database, the Court held he "did not exceed authorized access to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose." *Id.*, at 1662 (internal quotations and brackets omitted).

MPS alleges that Mr. Dong and Ms. Sheng used computers assigned to them, and it alleges Ms. Sheng asked for information that went beyond the normal scope of her duties.  However, MPS does not allege it denied her that access.  Nor does it allege that, while employed with MPS, Defendants accessed or obtained information they were not authorized to obtain.  (*See, e.g.,* Compl. ¶¶ 39-42.)  In addition, although MPS alleges Ms. Sheng asked for and was allowed to see MPS's materials in "ViewWise (a document-management program [it] uses to restrict access to confidential files to disallow copying)," it does not allege she circumvented the program and does not make clear that any of the files she viewed were materials she later copied either to her MPS laptop or to the external device referenced in the Complaint. *See, e.g., United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012).

MPS does allege that Mr. Dong and Ms. Sheng attached personal external devices to their computers and copied materials to those devices and alleges that they accessed their computers

6

"beyond the scope of the authorization granted to them by MPS." (Compl. ¶ 87.) Taking those allegations together, one can reasonably infer MPS did not authorize Defendants to attach personal external devices to their computers or to copy information to those devices. However, MPS's allegations that its computers are "protected computers," as that term is defined in the CFAA, are not supported by facts. *See* 18 U.S.C. § 1030(e)(2) (defining protected computer). It also fails to allege facts to show the results of the forensic analysis demonstrate the Defendants used MPS's devices after they resigned, *i.e.* after any authorization to use their MPS computers had ended.

The Court concludes that, as in *Van Buren*, the crux of MPS's allegations are that Mr. Dong and Ms. Sheng used information that they had the right to access for improper purposes. Under *Van Buren* that is not sufficient to state a claim for a violation of the CFAA, and the Court GRANTS, IN PART, Defendants motion to dismiss. Because the Court cannot say it would be futile, it will grant MPS leave to dismiss this claim.[6]

**C.     The Court Dismisses the Fraud Claim, in Part.**

   **1.     Defendants' Request for Judicial Notice.[7]**

Defendants ask the Court to take judicial notice of complaints filed by MPS against Meraki and other defendants in the United States District Court for the Western District of Texas (the "Texas litigation"). In that case, unlike here, MPS has asserted claims for trade secret misappropriation. (Defendants' Request for Judicial Notice ("RJN"), Ex. B (Texas Litigation Complaint) and Ex. C (Texas Litigation First Amended Complaint ("FAC")).)

In general, when it evaluates a motion to dismiss, the Court is limited to the allegations in the Complaint, documents attached thereto or incorporated by reference, or matters that are subject to judicial notice. The Court can take judicial notice of the fact that MPS filed these complaints

---

[6]     In light of this ruling, the Court does not address Defendants' arguments that MPS failed to allege facts to show damage or loss. If MPS chooses to amend, it should take into consideration the Supreme Court's discussion of the CFAA's definition of the terms damage and loss. *See Van Buren*, 141 S.Ct. at 1659-60.

[7]     The Court discharges its order to show cause regarding MPS's separately filed objections to Defendants' request for judicial notice. The Local Rules do require evidentiary objections to be contained in a brief. However, they do not specifically address requests for judicial notice, which often contain additional argument as Defendants' request does in this case. Accordingly, the Court concludes it is fair to allow MPS to file a separate response to that argument.

7

and of MPS's allegations in that case, but it cannot take judicial notice of disputed facts in those documents. *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

The allegations in the Complaint here are identical, or nearly identical, to allegations supporting the claims for misappropriation of trade secrets in the Texas litigation. (*Compare* Compl. ¶¶ 1-11, 21-70 *with* Texas Litigation FAC ¶¶ 3-4, 6-14, 35-84.) The Court concludes it is appropriate to consider the complaints filed in the Texas litigation to analyze whether MPS's fraud claim is superseded by CUTSA.

### 2. The Fraud Claim, as Drafted, is Superseded by CUTSA.

CUTSA supersedes "common law claims that are based on the same nucleus of facts" as trade secret misappropriation and, "[a]t least as to common law trade secret misappropriation claims, … occupies the field in California." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954, 958 (2009) (internal quotations and citations omitted). CUTSA does not supersede claims based on "contractual remedies" or civil remedies "that are not based on misappropriation of a trade secret." *Silvaco,* 184 Cal. App. 4th at 233; Cal. Civ. Code § 3246.7(b).

As is pertinent to MPS's fraud claim, CUTSA forbids the use of "misrepresentation" "to acquire knowledge of [a] trade secret." Cal. Civ. Code § 3426.1(a), (b)(2)(A). Common law claims premised on the wrongful taking of information that does not qualify as a trade secret also are superseded, unless the plaintiff identifies some law which confers property rights protecting the information. *Silvaco*, 184 Cal. App. 4th at 236-240; *see also Zomm*, 391 F. Supp. 3d at 954 (noting that "majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA") (quoting *SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *6 (N.D. Cal. Dec. 11, 2012)); *Heller v. Cepia, L.L.C.*, No. 11-cv-01146-JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012). The Court considers "whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Snapkeys*, 442 F. Supp. 3d at 1205 (quoting *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017)).

8

In *Snapkeys*, the court concluded the plaintiff's claims for fraud were superseded by CUTSA where its "theory of fraud depends entirely on its allegations that Google had all along intended to mislead Snapkeys into divulging Snapkeys' confidential information for Google's own use." 442 F. Supp. 3d at 1206. The court held that those "allegations also constitute 'facts supporting trade secret misappropriation,'" and fell within the scope of Civil Code sections 3426.1(a) and (b)(2)(A). *Id.* (quoting *Waymo LLC*, 256 F. Supp. 3d at 1062).

In contrast, in *Loop v. AI Labs Incorporated v. Gatti*, the court concluded that even though the plaintiffs' fraud and other state law claims contained "stray references" to confidential or proprietary information, they were not superseded. No. 15-cv-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015). That conclusion was based on allegations that the defendant "fraudulently induced [the plaintiff] to offer her employment based on misrepresentations about her experience, concealed her relationship with [another company] in order to continue work with [the plaintiff] and sabotaged relationships with [the plaintiff's] potential investors." *Id.*; *see also Metrocolor LLC v. L'oreal S.A.*, No. 18-cv-00364-CAS (Ex), 2020 WL 3802942, at *16 (C.D. Cal. July 7, 2020) (finding UCL claim not preempted where plaintiff alleged defendant engaged in confidential discussions with plaintiff under false pretenses in order to delay plaintiff from bringing a new product to market).

MPS alleges that Defendants falsely stated they would move to California and alleges they intentionally did not disclose their prior relationship, in order to induce MPS to hire them. MSP also alleges Defendants did not intend to honor the promises set forth in the Confidentiality Agreements. According to MPS, Defendants took these actions because they planned to use MPS's trade secrets and other confidential information to form Meraki and to compete with MPS.[8]

When a claim does "not genuinely allege 'alternative legal theories' but [is] a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else[,]" the claim will be superseded by CUTSA. *Silvaco*, 184 Cal. App. 4th at 240. The Court concludes

---

[8] Because the Court concludes that CUTSA supersedes claims based on the wrongful taking of information that might not otherwise qualify as a trade secret, the fact that MPS omits the use of the term "trade secrets" in paragraphs 92-109, which set forth its fraud claim, does not alter the Court's analysis.

9

that is the case here. MPS does incorporate by reference its earlier allegations regarding Defendants' applications for Chinese patents and Defendants' alleged failure to assign rights in those applications to MPS. However, the remaining allegations are more analogous to the facts in *Snapkeys* than the facts in *Loop AI Labs* or to the cases on which MPS relies in its brief. (*See* Opp. Br. at 8:13-9:6.) Moreover, the gravamen of the harm MPS claims to have suffered because of its reliance on the alleged misrepresentations and omissions is the harm that flows from Defendants' alleged improper acquisition and misuse of MPS's confidential information.[9] Therefore, the Court concludes that, as drafted, the fraud claim is superseded by CUTSA.

Accordingly, the Court GRANTS, IN PART, Defendants' motion to dismiss the fraud claim. Because the Court cannot say it would be futile, the Court will grant MPS leave to amend this claim, if it can do so in good faith and in compliance with Rule 11.

**D. Discovery Dispute.**

On June 2, 2021, the parties filed a joint letter brief, in which Defendants argue that MPS must comply with California Code of Civil Procedure section 2019.210 before they respond to outstanding discovery requests. Section 2019.210 requires, "[i]n any action alleging the misappropriation of a trade secret under" CUTSA, that the party making the claim identify the trade secret "with reasonable particularity" before "commencing discovery relating to the trade secret." MPS argues it has not asserted a claim under CUTSA and, therefore, is not required to comply with Section 2019.210.

The Court HEREBY REFERS this matter to a randomly assigned Magistrate Judge for purposes of supervising discovery. The Court also ORDERS the parties to meet and confer, as that term is defined in Northern District Civil Local Rule 1-5(n), to revisit the current dispute in light of the ruling on Defendants' motion. If they are unable to resolve the current dispute, they shall submit a revised joint letter brief to the Magistrate Judge assigned to this case.

---

[9] The parties' arguments on the patent issue also is not well-developed, including Defendants' assertions as to why the alleged patent rights would not give MPS a property interest separate and distinct from any trade secrets or other confidential and proprietary information. Therefore, if MPS amends and if Defendants again move to dismiss, the parties should be prepared to articulate their arguments more clearly.

10

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART Defendants' motion to dismiss. If MPS chooses to amend, it shall do so by no later than July 13, 2021. If MPS does not amend, Defendants shall answer the Complaint by July 27, 2021. If MPS does amend, Defendants shall answer or otherwise respond by August 3, 2021. The parties shall appear for a case management conference on August 20, 2021, and they shall file a joint case management conference statement by August 13, 2021.

**IT IS SO ORDERED**.

Dated: June 22, 2021

JEFFREY S. WHITE
United States District Judge

Cc: Magistrate Referral Clerk